USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: OCT 15 2012

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------

Gerry Wendrovsky,

                Plaintiff,

-v-

Chase Paymentech,

                Defendant.

------------------------------------------------------------------X

12 Civ. 0704 (AJN)

MEMORANDUM
AND ORDER

ALISON J. NATHAN, District Judge:

    Plaintiff, Gerry Wendrovsky ("Wendrovsky"), brings this putative class action against Defendant, Chase Paymentech ("Paymentech"), alleging breach of contract, breach of the implied covenant of good faith and fair dealing, and violation of New York's Business Law. (Compl. ¶¶ 1, 23–36). Defendant filed a Motion to Dismiss the case as subject to arbitration or, in the alternative, to stay it pending arbitration. (Docket # 8). Because the disputed contract validly incorporates by reference terms and conditions that include an arbitration clause, which is neither unconscionable nor illusory, Defendant's motion is GRANTED.

    **I.    STANDARD OR REVIEW**

    "In the context of motions to compel arbitration brought under the Federal Arbitration Act . . . , the court applies a standard similar to that applicable for a motion for summary judgment." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003); *DuBois v. Macy's East Inc.*, 338 F. App'x 32, 33 (2d Cir. 2009). "The threshold question facing any court considering a motion to compel arbitration is . . . whether the parties have indeed agreed to arbitration." *Schnabel v. Trilegiant Corp. & Affinion, Inc.*, --- F.3d

1

---, 2012 WL 3871366, at *6 (2d Cir. Sept. 7, 2012). "If the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." *Dubois*, 338 F. App'x at 33 (quoting *Oppenheimer & Co., Inc. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995)).

## II.  BACKGROUND

On December 10, 2009, Plaintiff entered into an agreement with Paymentech pursuant to which Paymentech was to provide online credit card processing services. (Compl. ¶ 1; Binyaminov Decl. Ex. C). Plaintiff entered this agreement by signing a three-page "Merchant Application and Agreement" ("Merchant Agreement") that was faxed to him by Paymentech representative Dimitriy Binyaminov. (Compl. Ex. A; Binyaminov Decl. Exs. B–C). Paymentech did not fax Plaintiff the "Terms and Conditions for Merchant Agreement" ("Terms and Conditions"). Instead, the fax cover page contained an internet link and indicated that Plaintiff could visit that website "[t]o access our Terms and Conditions." (Binyaminov Decl. Ex. B).

The Merchant Agreement that Plaintiff signed states that "**THIS MERCHANT APPLICATION AND AGREEMENT** and the Terms and Conditions for Merchant Agreement (collectively referred to herein as the 'Agreement') are entered into by and among JPMorgan Chase Bank, N.A. . . . and the Merchant . . . ." (Binyaminov Decl. Ex. C–D at 3) (emphasis in original). In another paragraph, the Merchant Agreement states "Merchant and each guarantor signing below . . . hereby acknowledge that they have each received and read (1) the Terms and Conditions for Merchant Agreement, (2) Schedule A

2

(Pricing) and (3) the Operating Guide." (*Id.*). Plaintiff represents in his opposition brief that he "never reviewed the Terms and Conditions." (Opp. Br. at 3).

The Terms and Conditions contain a choice of law provision selecting Texas law and a forum selection clause identifying Dallas as the location for any and all disputes "relating to or arising from this Agreement." (Compl. Ex. B ¶ 15.10). The Terms and Conditions also contain a provision stating: "**PLEASE READ THIS PROVISION CAREFULLY. IT PROVIDES THAT ANY CLAIM MAY BE RESOLVED BY BINDING ARBITRATION. WITH BINDING ARBITRATION YOU ACKNOWLEDGE AND AGREE THAT YOU ARE GIVING UP YOUR RIGHT TO HAVE A TRIAL BY JURY . . . .**" (*Id.*) (emphasis in original). The arbitration provision continues: "Any claim, dispute, or controversy . . . by either you or Paymentech against the other . . . arising from or relating in any way to this Agreement or to our relationship . . . shall be resolved exclusively and finally by binding arbitration administered by the National Arbitration Forum . . . ." (*Id.*).

Defendant seeks to arbitrate the present matter pursuant to this arbitration clause. Plaintiff argues that the Terms and Conditions are not validly incorporated by reference into the Merchant Agreement and, in the alternative, that the arbitration clause is illusory and unconscionable, as well as unenforceable because the NAF may not be available to preside over the arbitration. The Court addresses each of these arguments in turn.

### III. DISCUSSION

#### A. The Terms and Conditions Were Validly Incorporated by Reference into the Merchant Agreement that Plaintiff Signed

Plaintiff argues that the Terms and Conditions—including the arbitration clause, choice of law clause, and forum selection clause contained therein—are not binding on

3

him because the Merchant Agreement that Plaintiff signed did not make sufficiently clear reference to these Terms and Conditions. (Opp. Br. at 3–5). The Court disagrees.

The Second Circuit has held that "[p]arties to a contract are plainly free to incorporate by reference, and bind themselves *inter sese* to terms that may be found in other agreements to which they are not a party." *Ronan Assocs. v. Local 94-94A-94B, Int'l Union of Operating Eng'rs*, 24 F.3d 447, 449 (2d Cir. 1994). Courts routinely enforce arbitration clauses and rules governing arbitration that are clearly incorporated by reference into a contract. *See, e.g., Aceros Prefabricados, S.A. v. TradeArbed, Inc.*, 282 F.3d 92, 97 (2d Cir. 2002) ("parties were bound to arbitrate under arbitration clauses they never signed, where those clauses were contained in other documents that were incorporated by reference."); *Ronan*, 24 F.3d at 449 (finding employment contract incorporated by reference a collective bargaining agreement including right to compel arbitration); *Progressive Cas. Ins. Co. v. CA. Reaseguradora Nacional De Venezuela*, 991 F.2d 42, 47 (2d Cir. 1993) (finding insurance contract incorporated by reference a document that included arbitration provision binding the parties to arbitrate); *see also Oceanconnect.com, Inc. v. Chemoil Corp.*, 2008 WL 194360, at *10 (S.D. Tex. Jan. 23, 2008) ("a party's failure to read an incorporated by reference arbitration agreement does not excuse it from arbitration" and "an express provision that a plaintiff is bound by the terms of a particular document will not be defeated by a plaintiff's claim that it did not receive a copy of that document.") (Rosenthal, J.).[1]

---

[1] Though the Terms and Conditions contain a choice of law provision selecting Texas law, the Court cannot rely on Texas law before it decides whether those Terms and Conditions were adopted by the parties as part of the contract. *Trans-Tec Asia v. M/V Harmony Container*, 518 F.3d 1120, 1124 (9th Cir. 2008) ("[W]e cannot rely on the choice of law provision until we have decided, as a matter of law, that such a provision was a valid contractual term and was legitimately incorporated into the parties' contract.") (quoted approvingly in *Schnabel*, 2012 WL 3871366, at *7 ). However, "[c]hoice of law does not matter . . . unless the laws of the competing jurisdictions are actually in conflict." *Int'l Bus. Machs. Corp. v. Liberty Mut.*

In order for an incorporation by reference to be valid and enforceable, the contract must make clear reference to the incorporated document and describe "it in such terms that its identity may be ascertained beyond doubt." *New Moon Shipping Co. Ltd. v. MAN B & W Diesel AG*, 121 F.3d 24, 31 (2d Cir. 1997); *see also One Beacon Ins. Co. v. Crowley Marine Serv. Inc.*, 648 F.3d 258, 267 (5th Cir. 2011) ("Under general contract principles, where a contract expressly refers to and incorporates another instrument in specific terms which show a clear intent to incorporate that instrument into the contract, both instruments are to be construed together."). Thus, "[w]hile a party's failure to read a duly incorporated document will not excuse the obligation to be bound by its terms, a party will not be bound to the terms of any document unless it is clearly identified in the agreement." *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1201 (2d Cir. 1996) (internal citation omitted).

Examples of valid incorporation by reference include a contract stating that disputes "shall be determined . . . in accordance with the Commercial Arbitration Rules of the American Arbitration Association ('AAA')," in which case the AAA's rules were deemed validly incorporated by reference into the contract. *Contec Corp. v. Remote Solution, Co., Ltd.*, 398 F.3d 205, 208 (2d Cir. 2005). Similarly, when a contract stated that it was to be construed "IN ACCORDANCE WITH THE PURCHASE ORDER TERMS & CONDITIONS ON" a specified website, those terms and conditions were validly incorporated. *One Beacon Ins. Co.*, 648 F.3d at 263, 267–68. And when a clause in an insurance agreement stated that the agreement was "Subject to Facultative

---

*Ins. Co.*, 363 F.3d 137, 143 (2d Cir. 2004). Thus, because New York and Texas apply "substantially similar rules for determining" whether a document is incorporated by reference into a contract, the Court need not "resolve this typically thorny choice-of-law question" because "[w]hich state's law applies is . . . without significance." *See Schnabel*, 2012 WL 3871366, at *7.

Reinsurance Agreement," and the "Facultative Reinsurance Agreement" contained an arbitration clause, a party who signed the insurance agreement was deemed to have agreed to arbitrate because the arbitration clause was validly incorporated by reference. *Progressive*, 991 F.2d at 46–47.

By contrast, when an agreement incorporated the "applicable tarrifs, rules, conditions of carriage, regulations and timetables," a separate "Service Guide" that was not explicitly mentioned in the contract was not deemed to be adequately incorporated by reference. *Sotheby's v. Federal Express Corp.*, 97 F. Supp. 2d 491, 500 (S.D.N.Y. 2000) (Chin, J.). Similarly, when a document referenced "general regulations and rules" but did not specifically identify a document titled "Terms and Conditions," there was no incorporation by reference. *Sea Trade Co. v. FleetBoston Fin. Corp.*, 2007 WL 1288592, at *4 (S.D.N.Y. May 1, 2007) (Keenan, J.).

Here, Plaintiff argues that "a reasonable person would have no reason to believe that the 'Terms and Conditions' mentioned in the [Merchant Agreement] referred to an entirely separate document, as opposed to the numerous terms and conditions contained within the" Merchant Agreement itself. (Opp. Br. at 5). However, the agreement that Plaintiff signed refers to "This Merchant Application and Agreement *and* the Terms and Conditions for Merchant Agreement (*collectively* referred to herein as the 'Agreement')." (Binyaminov Decl. Exs. C–D) (emphasis added). The use of the words "and" and "collectively" put Plaintiff on notice that the "Terms and Conditions for Merchant Agreement" was a separate document. Furthermore, "the use of capitalized letters in the phrase" Terms and Conditions "indicates to any reasonable person that a specific document is being referenced." *Progressive*, 991 F.2d at 47.

6

In short, the Merchant Agreement that Plaintiff signed plainly incorporated by reference the Terms and Conditions, including the arbitration clause, forum selection clause, and choice of law provision contained therein.[2]

B.    The Arbitration Clause is not Illusory

Plaintiff argues in the alternative that even if the Terms and Conditions are validly incorporated by reference into the Merchant Agreement, the arbitration clause is invalid because it is illusory. (Opp. Br. at 6–8). Plaintiff's argument rests on a provision in the Terms and Conditions providing that:

> **15.12 Amendment.** This Agreement may be amended at any time by Paymentech upon 30 days notice to you. Notwithstanding the foregoing, in the event the terms of this Agreement must be amended pursuant to a change required by the Payment Brand Rules or any third party with jurisdiction over the matters described herein, such amendment will be effective immediately. Your electronic signature or continued submission of Transactions to us following such notice will be deemed to be your acceptance of such amendment.

(Compl. Ex. B ¶ 15.12). The "Agreement" is defined to include the "Merchant Application and Agreement and the Terms and Conditions for Merchant Agreement." (Binyaminov Exs. C–D at "3 of 12"). Thus, Plaintiff's argument regarding what it

---

[2] The Court's conclusion that the Terms and Conditions were validly incorporated by reference into the Merchant Agreement is not affected by the Second Circuit's recent decision in *Schnabel v. Trilegiant Corp. & Affinion, Inc.*, --- F.3d ---, 2012 WL 3871366, at *6 (2d Cir. Sept. 8, 2012). In *Schnabel*, consumer enrollees claimed that they were defrauded by a web-based travel merchant that offered a "free trial" offer for fifteen days. *Id.* at 8. After registering for the service, the consumer would receive an unsolicited email containing the Terms and Conditions. *Id.* at 4. The Second Circuit noted that "[t]he enrollment page does not include an 'incorporation clause'" and opined that its decision did not consider whether a party can be bound by an incorporation clause including "later-communicated terms unknown and effectively unknowable by the offeree at the time the offer was accepted." *Id.* at 10 n.12. In concluding that the Terms and Conditions contained in the subsequently sent email were not binding upon the consumers, the *Schnabel* court noted that the email sent to customers after their enrollment "was both temporally and spatially decoupled from the plaintiffs' enrollment in and use of" the Defendant's service and that "the term was delivered after initial enrollment and [individuals such as] plaintiffs would not be forced to confront the terms while enrolling in or using the service or maintaining their memberships." *Id.* at 13. The facts in *Schnabel* contrast with the present case, where the Terms and Conditions were accessible and available to the offeree, a sophisticated lawyer negotiating on behalf of his law office, at the time of his acceptance and were fully incorporated by reference into the Merchant Agreement.

describes as ¶ 15.12's "unilateral change provision" is effectively an attack on the entire contract, and not merely the arbitration agreement.

"[A] challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449 (2006); *see also In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 190 (Tex. 2007) (because "this defense relates to the parties' entire contract rather than the arbitration clause alone, it is a question for the arbitrators."). Because Plaintiff's argument regarding ¶ 15.12 of the Terms and Conditions is effectively an attack on the entire agreement and not just the arbitration clause, it is an issue for an arbitrator to decide. *Buckeye*, 546 U.S. at 449.

Even if the Court were to construe Plaintiff as narrowly attacking only the validity of the arbitration clause, Plaintiff's argument would still be rejected because courts construing Texas law have consistently held the arbitration clauses are not illusory even when they may be amended by one party so long as the amendment cannot take retroactive effect and the non-amending party is given some period of notice. *See, e.g., Torres v. S.G.E. Mgt, L.L.C.*, 397 F. App'x 63, 65 (5th Cir. 2010) (if company is required to give employee "30 days' notice of any amendments, then the arbitration clause is enforceable."); *Armstrong v. Assoc. Int'l Holding Corp.*, 242 F. App'x 955, 958 (5th Cir. 2007) (arbitration clause not illusory when company was required to give 30 days' notice prior to any amendment or modification); *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 607 (Tex. 2005); *In re Halliburton Co.*, 80 S.W.3d 566, 569–70 (Tex. 2002) (arbitration clause not illusory where employer was required to give ten days notice to employee).

The Amendment Clause at issue in this case requires 30 days notice and does not provide for retroactive application. (Compl. Ex. B. ¶ 15.12). This is not a case containing the possibility that if a plaintiff "sought to invoke arbitration with the company pursuant to the agreement, nothing would prevent [the defendant] from changing the agreement and making those changes applicable to that pending dispute if it determined that arbitration was no longer in its interest." *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 206 (5th Cir. 2012). To the contrary, Plaintiff would have had an opportunity to reject revisions by withholding his "electronic signature" or ceasing to submit transactions to Paymentech for processing. (Compl. Ex. B. ¶ 15.12). This is not an example of a contract where one "party retains the unilateral, unrestricted right to terminate the arbitration agreement." *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 231 (Tex. 2003). Under Texas law, ¶ 15.12 of the Terms and Conditions does not render the arbitration clause illusory.[3]

Moreover, case law from Texas suggests that the arbitration clause is not illusory because it was part of a broader agreement that provided sufficient consideration in exchange for Plaintiff's agreement to arbitrate. *See, e.g., In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 607 (Tex. 2005). In *AdvancePCS*, the Supreme Court of Texas explained that "binding promises are required of both parties" when an arbitration clause is in a "stand-alone" contract. *Id.* However, "when an arbitration clause is part of an

---

[3] The Court's conclusion is not affected by the language in the Amendment Clause allowing for immediate amendment to the agreement "pursuant to a change required by the Payment Brand Rules or any third party with jurisdiction over the matters herein." The Payment Brand Rules are defined as the "bylaws, rules, and regulations" of the "Payment Brands," which are in turn defined as "any payment method provider whose payment method is accepted by Paymentech for processing," including Visa, Mastercard, and Discover. (Compl. Ex. B. ¶ 17). While this provision allows for immediate revision of the terms of the agreement, it does not allow defendant to initiate or implement such a change unilaterally or retroactively. Rather, it premises the portions of the contract that are dependent on the regulations of the Payment Brands—for example, the security standards that Plaintiff was to comply with when processing fees (*id.* ¶ 12)—upon the regulations promulgated by third parties.

underlying contract, the rest of the parties' agreement provides the consideration" and the arbitration clause cannot be characterized as illusory. *Id.* Thus, the Supreme Court of Texas has concluded that if a plaintiff has "used [Defendant's] services and network . . . for 10 years, [the plaintiff] cannot claim their agreement to arbitrate was without consideration." *Id.* Similarly, in this case, Plaintiff used Defendant's processing service for over one year, and therefore was provided with adequate consideration in exchange for the agreement to arbitrate.

   C. <u>The Arbitration Clause is not Unconscionable</u>

     1. Procedural Unconscionability

Plaintiff contends that the contract is procedurally unconscionable because "Paymentech effectively concealed [the Terms and Conditions] from Plaintiff." (Opp. Br. at 8). Plaintiff cites no case law for the proposition that it is procedurally unconscionable for a contract to incorporate by reference Terms and Conditions even when the incorporated document is not delivered to an offeree for review. Indeed, as discussed in Section "III.A" above, Courts routinely enforce arbitration clauses incorporated by reference into contracts even when the addendum containing the arbitration clause is not provided for review. *See, e.g., Progressive*, 991 F.2d at 47 (opining that if a plaintiff was not familiar with the separate document incorporated by reference into the contract, "it should either have asked [Defendant], or objected to the provision before signing the Policy."). That Paymentech failed to deliver a physical copy of the Terms and Conditions to Plaintiff for his review prior to his signing the contract does not render the agreement procedurally unconscionable.

     2. Substantive Unconscionability

10

Plaintiff argues that the arbitration clause is substantively unconscionable because it contains language that prohibits him from pursuing the case on a class-wide basis. (Opp. Br. at 8–9).[4] Plaintiff asserts that "if his claims cannot be brought through class action litigation in this Court, Plaintiff will have no choice but to forego his claims because, based upon his own analysis and discussions with counsel, the costs required to prevail in arbitration will greatly exceed any reward he might reasonably expect." (Opp. Br. at 8–9). Plaintiff argues that the "class action mechanism" is designed to avoid "this exact injustice" and that preventing him from pursuing his case on a class-wide basis is therefore unconscionable. (*Id.*).

Plaintiff's substantive unconscionability argument is foreclosed by the Supreme Court's decision in *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011). In *Concepcion*, the Supreme Court held that the Federal Arbitration Act ("FAA") preempted a rule enforced by the California Supreme Court that barred as unconscionable class action waiver provisions in consumer contracts containing small damage awards when it was alleged that the party with the superior bargaining power had inserted the waivers to deliberately cheat large numbers of consumers out of individually small sums of money. *Concepcion*, 131 S. Ct. at 1746, 1753. The Supreme Court held that "[w]hen state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA." *Id.* at 1747. The *Concepcion* dissenters argued that prohibiting state courts from voiding as

---

[4] Even if the Terms and Conditions did not contain an explicit class action waiver, Plaintiff would not be able to arbitrate his claim on a class-wide basis because a defendant cannot be compelled to engage in class-wide arbitration absent contractual consent. *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758, 1775 (2010) ("a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so.") (emphasis in original); *In re Am. Express Merchants' Litig.*, 667 F.3d 204, 213 (2d Cir. 2012) ("parties cannot be forced to arbitrate disputes in a class-action arbitration unless the parties agree to class action arbitration.").

11

unconscionable such class action waivers would effectively preclude prosecution of small dollar claims and insulate certain defendants from liability for their torts. *See id.* at 1760–61. In rejecting this argument, the majority in *Concepcion* held that "States cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons." *Id.* at 1753.

Plaintiff, citing the Second Circuit's recent decision in *In re: Am. Express Merchants' Litig.*, 667 F.3d 204 (2d Cir. 2012) ("*Amex III*"), argues that *Concepcion* does not bear on this case because Plaintiff is not seeking application of a state law rule, but rather seeks to void an arbitration clause that "is incompatible with the FAA itself." (Opp. Br. at 9).

*Amex III* does not support Plaintiff's position. In *Amex III*, the Second Circuit held unenforceable an arbitration clause containing a class action waiver provision because it would have precluded a federal antitrust class action. *Amex III*, 667 F.3d at 218–19. The Court of Appeals stated that "our holding rests squarely on a vindication of statutory rights analysis," *id.* at 213, noting that "if plaintiffs cannot pursue their allegations of antitrust law violations as a class, it is financially impossible for the plaintiffs to seek to vindicate their *federal* statutory rights." *Id.* at 219 (emphasis added). Judge Pooler's opinion concurring in the Second Circuit's decision to deny *en banc* rehearing of *Amex III* further stressed that the issue in *Amex III* "is not the right to proceed as a class, but the ability to effectively vindicate a *federal* statutory right that predates the FAA." *In re Am. Express Merchants' Litig.*, 681 F.3d 139, 140 (2d Cir. 2012) (Pooler, J. concurring in the denial of rehearing *en banc*) (emphasis added). Judge

12

Pooler distinguished *Amex III* from *Concepcion* on the basis that "*Amex III* deals with federal statutory rights," whereas *Concepcion* addressed state contract rights. *Id.*

The Complaint in the present cases alleges only state law causes of action—two related to the common law of contracts and one for violation of New York's General Business Law. *Amex III* therefore has no applicability and *Concepcion* precludes Plaintiff's argument that the arbitration clause is substantively unconscionable because it prohibits class-wide litigation.

Even if Plaintiff were able to successfully argue that *Amex III* allows him to seek invalidation of the arbitration clause on the grounds that it renders the present litigation prohibitively expensive, he still has not met the required burden of showing "the likelihood of incurring such costs." *Amex III*, 667 F.3d at 217; (quoting *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000)). *Amex III* observed "that the evidentiary record necessary to avoid a class-action arbitration waiver is not easily assembled." *Amex III*, 667 F.3d at 217. *Amex III* found that the cost of plaintiffs individually arbitrating their antitrust dispute with American Express would be prohibitively expensive only after implicitly crediting an affidavit attesting that the cost of retaining the kind of expert assistance necessary to prosecute such an antitrust claim could reasonably be expected to exceed $1 million. *Id.* at 217–19; *see also In re Am. Express Merchants' Litig.*, 681 F.3d at 142 (arbitration clause unenforceable under *Amex III* because plaintiffs "will likely require complex discovery and expert testimony" that is extremely costly up front).

By contrast, the present case is a straight forward contract claim and Plaintiff has not represented that it will require substantial discovery or retention of an expert. *Amex*

13

*III* does not permit an arbitration clause to be rendered unenforceable as prohibitively expensive under such circumstances. Moreover, Plaintiff's argument that proceeding in this Court, rather than arbitrating, will be more financially feasible appears to assume that Plaintiff will obtain class certification for his claim. Such an outcome is not assured at this stage of the litigation.

The Court notes that defendant has offered to pay the first $2,500 in arbitration-related fees "and to consider in good faith any request to pay additional arbitration-related costs." (Ruffino Decl Ex. C; Reply at 8). Additionally, the arbitration clause in the Merchant Agreement also contains a fee-shifting provision, and Defendant has agreed "to waive its right to seek fees if it prevails in arbitration." (Opp Br. at 9). Defendant has further offered to arbitrate the dispute in New York, where Plaintiff is located, even though the forum selection clause requires arbitration in Dallas, where Defendant is based. (Ruffino Decl. Ex. C; Pl. Br. at 6). These concessions by Defendant underscore the absence of any adequate showing by Plaintiff that arbitration will be prohibitively expensive.

D. The Arbitration Clause is Enforceable in Spite of the NAF's Possible Unavailability to Preside Over This Case

Plaintiff argues that the arbitration provision cannot be enforced because the National Arbitration Forum ("NAF") is no longer available for consumer arbitrations.

Plaintiff's argument stems from a consent decree entered into by the NAF and the Minnesota Attorney General's office on July 19, 2012, pursuant to which "[o]n or after July 24, 2009, no NAF Entity shall . . . [a]dminister or process any new Consumer Arbitration." Consent Decree, State of Minnesota v. National Arbitration Forum, Inc.,

14

No. 27-CV-09-18550 (Minn. County Ct. 2009).[5] Plaintiff did not provide the consent decree for the Court to review, but it is a publicly available court document of which the Court may take judicial notice. *Rivera-Powell v. New York City Bd. of Elections*, 470 F.3d 458, 464 n.6 (2d Cir. 2006). The consent decree defines a "Consumer Arbitration" as "a dispute between a business entity and a private individual which relates to goods, services, or property of any kind allegedly provided by any business entity to the individual . . . ." (*Id.*).

The agreement in this case was signed by Wendrovsky on behalf of a business titled "Law Office of Gerry M. Wendrovsky," which the agreement identifies as a "merchant." (Ruffino Decl. Ex. A at 4). Similarly, the account name listed in the Merchant Agreement is "Law Office of Gerry M. Wendrovsky." (*Id.* at 3). This is therefore a dispute between a law office (identified in the relevant contract as a business and a merchant) and Paymentech; it is not a consumer dispute between a bank and a private individual, such as an individual credit card holder. There is no basis to conclude that the NAF would not preside over an arbitration of this dispute. *See Dubois*, 338 F. App'x at 33 (after a party presents evidentiary facts to substantiate its right to enforce an arbitration clause, the burden is on the other party to present evidentiary facts indicating that a trial is necessary to resolve the issue).

Furthermore, even if the NAF is not available to preside over this dispute, its absence does not render the arbitration clause unenforceable. Unavailability of a selected arbitrable forum precludes enforcement of an arbitration provision if the unavailable forum is the "exclusive" one chosen for arbitration under the contract. *In re Salomon Inc. Shareholders' Litig.*, 68 F.3d 554, 557 (2d Cir. 1995) (no arbitration where "all disputes

---

[5] The Consent Decree is available at http://pubcit.typepad.com/files/nafconsentdecree.pdf.

15

were to be arbitrated by the [the unavailable arbitration forum] and only the [unavailable arbitration forum]."). In the present case, the contract provides that the parties "will agree on another arbitration forum if the National Arbitration Forum ceases operations." (Terms and Condditions ¶ 15.10).

Confronting a case involving an arbitration clause containing identical language regarding agreement on an alternative arbitration forum if the NAF "ceases operation," Judge Engelmayer, noting that the question turns on the parties' intent at the time that they entered the agreement, held that "[i]t is difficult to imagine language that could more clearly indicate the parties' willingness and intention to arbitrate in a forum other than the designated forum." *Crewe v. Rich Dad Educ., LLC*, --- F. Supp. 2d ---, 2012 WL 3240185, at *12 (S.D.N.Y. Aug. 3, 2012). Judge Engelmayer observed that "[t]he clear purpose of this provision was to provide for an alternative arbitral mechanism in the event NAF was unavailable to resolve the parties' dispute, not to make arbitrability turn on the happenstance of whether NAF disappeared outright or merely narrowed its operations to no longer encompass consumer disputes." *Id.* Judge Engelmayer's opinion is in accord with a number of courts around the country that have come to the same conclusion in identical or very similar circumstances. *See, e.g., Khan v. Dell, Inc.*, 669 F.3d 350, 354–57 (3d Cir. 2012) (alternate arbitrator appropriate where NAF is no longer available because of decision not to preside over consumer arbitrations); *In re Gateway LX6810 Computer Prods. Litig.*, 2011 WL 3099862, at *2 (C.D. Cal. July 21, 2011) (substitute arbitrator appropriate when contract provides that parties "will agree on another arbitration forum if NAF ceases operations."); *Mori v. East Side Lenders, LLC*, 2011 WL 2518966, at *4–5 (N.D. Ill. June 24, 2011) (same).

This Court is persuaded to adopt the reasoning articulated by Judge Engelmayer. Particularly given that there is a presumption in favor of arbitrability after it has been determined that the parties entered into a validly formed and enforceable arbitration agreement, *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 130 S. Ct. 2847, 2858 (2010), the Court determines that the arbitration clause contained in the Terms and Conditions clearly provides for arbitration at an alternative forum should the NAF be unavailable.

## CONCLUSION

For the foregoing reasons, this case is DISMISSED as subject to arbitration.[6] The Clerk of Court shall close this case.

Dated: October 15, 2012
New York, New York

_____
ALISON J. NATHAN
United States District Judge

---

[6] If a plaintiff's claims are arbitrable, the ordinary remedy contemplated by the FAA is a stay. *See* 9 U.S.C. § 3. However, when all of the issues raised in a complaint are subject to arbitration, dismissal is appropriate. *Lismore v. Société Générale*, 2012 WL 3577833, at *9 n.3 (S.D.N.Y. Aug. 17, 2012).